# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **FEENIX PAYMENT SYSTEMS, LLC,** *et al.* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 20-1519-MAK** |
| | : | |
| **STEEL CAPITAL MANAGEMENT, LLC,** *et al.* | : | |

## FINDINGS OF FACT and CONCLUSIONS OF LAW

**KEARNEY, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**June 24, 2021**

　　　　An experienced Wall Street banker and his associates formed two related businesses to provide more conventional loan financing to businesses paying them fees to process their credit card receipts. A couple of the associates departed and are allegedly competing in the same market with a new company. The two businesses sued their former associates and new competitor under the Defend Trade Secrets Act for stealing their business model and presumably revenue. The two businesses filed a redacted Complaint because, as recently conceded, they wanted to avoid our required granular analysis of each disclosure they decided to plead.[1] The alleged competitor moved to unseal.[2] The two businesses continued to redact even though they attached details of their business model in other filings and conceded disclosures on websites and public filings. They instead chose to have federal courts invest days of scrutinizing hundreds of pages of briefing and an extended hearing solely to ensure public access.

　　　　We granted in part and denied in part the Motion to unseal on May 28, 2021, requiring an amended Complaint by June 2, 2021, either including or eliminating the previously redacted material with the exception of redacting limited language in Paragraphs 40 and 49 in the second line. We held an evidentiary hearing on the continued preclusion of public access to the limited material which the businesses defined as "trade secrets" redacted in Paragraphs forty and forty-

nine of their Complaint. We evaluated the credibility of the principal of the parties seeking to preclude public access. We reviewed adduced evidence.

We today lift the seal on the balance of paragraphs 40 and 49 of the amended Complaint and direct the two businesses seeking a jury's review of their allegations to promptly file a second amended Complaint without redactions and a new Memorandum in support of their motion to retain the seal with limited redactions based upon our findings of fact and conclusions of law.

I.      Findings of fact

We find after evaluating the credibility of the Plaintiff's witness Keith Lee and adduced evidence:

1.      Keith Lee and his associates formed Feenix Payment Systems, LLC to provide credit card processing services with the consumer-facing business paying Feenix Payment a percentage of each credit card transaction as a fee.

2.      They also formed Feenix Venture Partners, LLC to provide loans to the same businesses using their credit card processing services allowing for repayment over a longer period of time than offered by companies providing similar services.

3.      Mr. Lee believes he found a "secret sauce" niche in servicing businesses who both pay credit card processing fees and need capital by tying the two services together and leveraging the benefits from the two services to maximize returns for Feenix investors.

4.      Mr. Lee and his partners worked on and developed a dual service business offering loans to businesses retaining Feenix Payment to process credit card payments and with Feenix Venture issuing more conventional loans at interest rates lower than those offered by merchant advance companies and with more flexibility than offered by purely credit card processing companies.

5. Mr. Lee and his partners solicit investors through written materials and disclosures to fund Feenix Venture's extending loans after evaluating repayment criteria based on confidential underwriting information.

6. Feenix prepares underwriting material, Excel loan information, credit criteria not shared with the public, presentations to their investors describing individual investment opportunities, pricing models, and the metrics used to evaluate the ongoing credibility of loans both at origination and on restructure, as well as promises and representations made to the investors.

7. This data varies by customer and investor.

8. The Feenix companies redacted allegations in its Complaint describing its business in the broadest manner possible.

9. The Feenix companies did not plead the details of their inter-relationship, terms of their credit processing, underwriting, or investor materials.

10. They instead redacted broadly described strategies partially disclosed either on its or others websites, in interviews with the press, to publicly traded companies for their public filings, and in lawsuits seeking to collect on their loans or otherwise enforce obligations.

11. Feenix also redacted more detailed information in a Memorandum in opposition to unsealing the Complaint.[3]

12. Feenix continued to redact broadly described terms of an undisclosed business model although they publicly filed a description of their lending business on February 9, 2021 authored by their authorized agent as a "unique investment model that couples investment capital with payment processing services. Each of Feenix's portfolio companies receives an investment in debt or equity, and utilizes a subsidiary of Feenix as its credit card payment processor. The

combination of investment capital and credit card processing (CCP) fees 'creates a win-win' partnership for investors and portfolio companies. The credit card processing data provides the investor with real-time sales transparency and the CCP fee margin provides the investor high current income, with equity-like upside and significant recovery for downside protection. Additionally, the portfolio company is able to access competitive and often non-dilutive financing by monetizing an unavoidable expense that is being paid to its current processors, thus yielding a benefit for both parties."[4]

13. We described our concerns with Feenix's seal strategy on broadly phrased descriptions in paragraphs forty and forty-nine sufficient to state a claim under Federal Rule 8 in our May 28, 2021 Memorandum.

14. Feenix continued to redact general allegations in paragraphs forty and forty-nine arguing their most general descriptions of the business model are trade secrets.

## II. Conclusions of Law

15. We apply the rigorous standard of common law right of access when considering a challenge to the sealing of court documents. [5]

16. The common law right of access "promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court."[6]

17. Observation by the public reduces "possibilities for injustice, incompetence, perjury, and fraud."[7]

18. The right of access includes the right to "inspect and copy public records and documents, including judicial records and documents."[8]

19. A party seeking to overcome the presumption of access must show "the need for secrecy outweighs the presumption of access that normally attaches to such documents."[9]

20. The party seeking to preclude public access must demonstrate the material is the type of information courts will protect and public disclosure would result in a serious, well-specified injury to the party seeking the seal.[10]

21. Broad allegations of harm are insufficient.[11]

22. "[C]areful factfinding and balancing of competing interests is required before the strong presumption of openness can be overcome by the secrecy interests of private litigants."[12]

23. Parties seeking to preclude public access must avoid the easy way out of sealing everything because it is "sensible." The test is granular. We must examine each publicly filed statement to determine whether we can preclude public access.

24. An interest in protecting a trade secret may overcome a presumption of public access.[13]

25. But the language at issue must qualify as a trade secret.[14]

26. "[A] plaintiff must identify a trade secret with sufficient particularity so as to provide notice to a defendant of what he is accused of misappropriating and for a court to determine whether misappropriation has or is threatened to occur."[15]

27. To qualify as a trade secret under the Defend Trade Secrets Act, the party seeking protection must have taken reasonable steps to ensure confidentiality of the alleged secret, the information must not be publicly available, and the alleged secret must derive independent economic value.[16]

28. The language a party is seeking to redact must specifically articulate the trade secret.[17]

29. The Restatement defines a trade secret as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."[18]

30. "Confidential commercial information" which does not qualify as a trade secret "is not entitled to the same level of protection from disclosure as trade secret information."[19]

31. The status of an alleged trade secret must be determined by evaluating all "relevant factors, including the value, secrecy, and definiteness of the information."[20]

32. Information publicly available or generally known in an industry cannot be a trade secret.[21]

33. "Because of the intangible nature of a trade secret, the extent of the property right therein is defined by the extent to which the owner of the secret protects his interest from disclosure to others."[22]

34. "If an individual discloses his trade secrets to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished."[23]

35. A specifically defined business model in a unique market unknown to the persons in the same market may be a trade secret. For example, in *Par Pharmaceutical, Inc. v. QuVa Pharma, Inc.,* our Court of Appeals found Par demonstrated a reasonable likelihood its "APS" Plan to be a trade secret as it disclosed economically valuable procedures and Par took reasonable steps to protect the secrecy of the Plan using non-disclosure agreements and facility security measures.[24] Our Court of Appeals affirmed the Plan was not publicly known as supported by several examples of non-public information from the Plan identified by an expert.[25] The court

observed, "while some individual elements of the APS Plan may be known in the industry, Par's combination of the elements" in its process likely constitutes a trade secret.[26]

36. But this business model trade secret must be described "with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies."[27]

37. Feenix must describe the trade secret with specificity.[28]

38. Feenix's allegations at paragraphs 40 and 49 are the most general possible under Rule 8 to state a claim.

39. Feenix's broad description of a business model in paragraphs forty and forty-nine is not a trade secret. The allegations instead describe previously disclosed or otherwise established business strategies in the most general terms.

40. No redacted allegation is so foreign to the market as to render it a trade secret to Feenix. We recognize the combination of well known finance strategies may be creative in this market and may warrant findings of misappropriation of identified trade secrets following trial but the allegations in paragraphs forty and forty-nine either separately or read as some formula for a business idea is not a trade secret.

41. Feenix's business plan may be a trade secret. But allegations generally describing how Feenix approaches its market and investors are not.

42. For example, Feenix redacted language which refers to materials used to explain and sell but not identifying those materials or otherwise identifying the definite and specific business plans which may form trade secrets subject to discovery and potential jury findings.

43. Nothing in paragraphs forty and forty-nine of the amended Complaint identifies confidential financial information, metrics, customer pricing information, market share data, calculations to determine profitability, customer lists, marketing and pricing strategy, production costs, performance reports or even a strategic marketing plan identifying their markets, profit budgeting information, or pricing and costs documents.[29]

---

[1] ECF Doc. No. 36, p. 6 of 16 ("Considering that the granular aspects of Feenix's business model are part of the overarching strategy described above, Feenix sensibly did not undertake a piecemeal redaction based on a fact-intensive analysis of what Defendants have revealed already and what has been partially disclosed in the past.") .

[2] ECF Doc. No. 14.

[3] ECF Doc. No. 36.

[4] ECF Doc. No. 37-1, p. 12 of 16.

[5] *In re Avandia Mktg., Sales Practices and Products Liab. Litig.,* 924 F.3d 662, 670 (3d Cir. 2019).

[6] *Id.* at 672 (quoting *Littlejohn v. BIC Corp.,* 851 F.2d 673, 678 (3d Cir. 1988)).

[7] *Id.* (quoting *Littlejohn*, 851 F.2d at 678).

[8] *Id.* (*quoting Goldstein v. Forbes (In re Cendant Corp.),* 260 F.3d 183, 192 (3d Cir. 2001)).

[9] *Leucadia, Inc. v. Applied Extrusion Techs., Inc.,* 998 F.2d 157, 166 (3d Cir. 1993) (citation omitted).

[10] *Miller v. Ind. Hosp.,* 16 F.3d 549, 551 (3d Cir. 1994).

[11] *In re Cendant Corp.,* 260 F. 3d at 194.

[12] *Leucadia,* 998 F.2d at 167 (citing *Littlejohn*, 851 F.2d at 685).

[13] *Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059,1073 (3d Cir. 1984).

[14] *See Littlejohn,* 851 F.2d at 685.

[15] *Lithero, LLC v. AstraZeneca Pharmaceuticals LP,* No.19-2320, 2020 WL 4699041, at *1 (D. Del. Aug. 13, 2020) (quoting *Progressive Sterilization, LLC v. Turbett Surgical LLC,* No. 19-627, 2020 WL 1849709, at *6 (D. Del. Apr. 13, 2020), *report and recommendation adopted,* 2020 WL 3071951 (D. Del. June 10, 2020)).

[16] *See* 18 U.S.C. § 1839(3).

[17] *Cole's Wexford Hotel, Inc. v. Highmark, Inc.,* No. 10-1609, 2019 WL 3778090, at *13 (W.D. Pa. May 31, 2019) (citing Restatement (Third) of Unfair Competition § 39 (1995)); *see also Agrofresh, Inc. v. Essentiv LLC,* No. 16-662, 2020 WL 7024867, at *6-7 (D. Del. Nov. 30, 2020) (Judge Noreika held "testing protocols" did not qualify as a trade secret, because the party seeking to preclude public access did not articulate the trade secret with specificity).

[18] *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1001 (1982) (citing Restatement of Torts § 757, Comment b (1939)).

[19] *Cole's Wexford Hotel, Inc.,* 2019 WL 3778090 at *12 (quoting *Littlejohn,* 851 F.2d at 685).

[20] Restatement (Third) of Unfair Competition § 39 (1995).

[21] *Ruckelshaus,* 467 U.S. at 1002.

[22] *Id.* (citations omitted).

[23] *Id.* (citations omitted).

[24] 764 F. App'x 273, 278 (3d Cir. 2019) (unpublished).

[25] *Id.*

[26] *Id.* "[E]ven though each and every element of plaintiff's [ingredients in a product formulation may be] known to the industry, the combination of those elements may be a trade secret if it produces a product superior to that of competitors." *Id.* at 279 (quoting *Rohm and Haas Co. v. Adco Chem. Co.,* 689 F.2d 424, 433 (3d Cir. 1982).

[27] *Oakwood Labs., LLC v. Thanoo*, No. 19-3707, 2021 WL 2325127, at *9 (3d Cir. June 8, 2021) (quoting *Diodes, Inc. v. Franzen,* 260 Cal. App. 2d 244, 253 (Cal. Ct. App. 1968)).

[28] *See id.*

[29] *See Carbo Ceramics, Inc. v. Keefe,* 166 F. App'x. 714, 719-20 (5th Cir. 2006); *HTS, Inc. v. Boley,* 954 F. Supp. 2d 927, 944-45 (D. Ariz. 2013); *Philips Elecs. N.A. Corp. v. Hope,* 631 F. Supp. 2d 705, 721 (M.D.N.C. 2009); *LeJeune v. Coin Acceptors, Inc.,* 849 A.2d 451, 461-64 (Md. 2004).