**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| FEENIX PAYMENT SYSTEMS, LLC, and FEENIX VENTURE PARTNERS, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 20-cv-01519-MAK |
| STEEL CAPITAL MANAGEMENT, LLC, STEEL PAYMENTS, LLC, MICHAEL HOFFMAN, and MARC SEHGAL, | ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL**

## INTRODUCTION

Plaintiffs, Feenix Payment Systems, LLC and Feenix Venture Partners, LLC ("Feenix"), despite being the party bearing the burden of proof, have produced far more of substance to date than Defendants, Steel Capital Management, LLC, Steel Payments, LLC, Michael Hoffman, and Marc Sehgal ("Defendants"). Over the past months, Defendants have shifted their basis for withholding production from the filing and resolution of their motion for judgment on the pleadings to Feenix's response to Interrogatory No. 2. Now that both have been addressed, Defendants aim to distract from the fact that they have made barely any efforts to produce documents and internal communications despite this Court's order by pointing to Feenix's production efforts.

As an initial matter, Feenix's amended response to Defendants' Interrogatory No. 2 (the "Amended Response") was properly designated Attorneys' Eyes Only. The Amended Response contains sensitive business information that requires protection from a competitor, and the AEO designation is intended for precisely such a situation. Defendants have confidently claimed to have made a "fulsome production" responsive to the Amended Response in spite of the AEO designation, so either their attorneys were able to communicate the contents of the Amended Response, or Defendants never required the Amended Response to inform them of what trade secrets are at issue to begin with. In either event, this complaint is frivolous.

Additionally, Feenix's production efforts to date have been significantly greater than Defendants', and Feenix has accomplished this despite having to fight at every turn for Defendants to acknowledge their discovery obligations and despite Defendants' incessant efforts to burden Feenix's production. Even with Feenix's reasonable edits, Defendants' requested search protocol has resulted in the collection of over 450,000 documents, over 310,000 of which

are covered by Defendants' search terms. Defendants have complained of Feenix's search terms

resulting in an additional 2,400 hits but have yet to inform Feenix of the size of their collected

universe of documents or provide a search term hit report as contemplated by the parties'

agreement. From the beginning, Feenix has prioritized efficiency and targeted only the

documents at the heart of the matter. Feenix has offered multiple times to meet and confer to try

to agree on reasonable parameters for the documents each party has to review and produce.

Instead, Defendants chose to lump this matter with its frivolous complaint about Feenix's AEO

designation and engage in unnecessary motion practice, in spite of their paltry production efforts

to date in direct contravention of this Court's order. Defendants filed the first motion to compel

in this action, and then neglected to comply with this Court's order, forcing Feenix to request this

Court's involvement. ECF Doc. No. 119. Defendants now file another motion to compel to again

avoid confronting their own production obligations. To curtail this pattern of behavior, Feenix

respectfully requests that the Court deny Defendants' motion to compel.

## BACKGROUND

A.      **Feenix, as the party bearing the burden of proof, has made a far more
        substantial production than Defendants.**

The parties agreed on June 9 to a July 7 deadline for substantial completion of discovery.

ECF Doc. No. 89. On May 27, this Court issued its ruling on Defendants' motion for judgment

on the pleadings (ECF Doc. No. 79), the filing and pending resolution of which had, to that

point, been Defendants' excuse for refusing to produce the majority of documents responsive to

Feenix's twenty targeted requests for production. Ex. 1. At the time, Feenix believed that the

Court's clarification of the claims at issue would allow the parties to move forward cooperatively

in discovery. On June 10, Defendants began to lay the groundwork for its next dilatory

maneuver, stating that even though all but one of Feenix's claims had survived their motion for judgment on the pleadings, Defendants would maintain their objections to Feenix's requests for production "until Plaintiffs identify their purported trade secrets." ECF Doc. No. 120-3, at Exhibit 1.

The parties exchanged initial search protocols on June 16. ECF Doc. No. 120-3, at Exhibit 2 (the "Steel Search Protocol") and Exhibit 3 (the "Feenix Search Protocol"). Feenix noted that Defendants' proposed terms were limited in a way intended to only pick up specific documents that Defendants had agreed to produce at the time, such as the Steel Capital entities' certificates of formation, that would almost certainly not provide much information relevant to the case. Steel Search Protocol. Feenix recognized the futility of proposing search terms to attain the discovery it believed it was entitled to when Defendants still staunchly opposed that entitlement to discovery on the surviving claims, albeit on new grounds. Accordingly, Feenix proposed meeting and conferring to reach an agreement on the scope of production to avoid a fruitless back-and-forth. ECF Doc. No. 120-3, at Exhibit 4. The parties met and conferred on June 22 but did not reach an agreement. Despite knowing that any proposed revisions to the Steel Search Protocol would not result in any additional responsive documents produced given Defendants' new reason for avoiding production, Feenix provided edits to the Steel Search Protocol when Defendants stated they would object to further revisions from Plaintiffs in spite of the obvious impasse as to the scope of Defendants' production. ECF Doc. No. 120-3, at Exhibit 7.

When Defendants returned their comments to Feenix's Search Protocol, which included a drastic expansion of the repositories to be collected (such as personal phones and emails of all Feenix personnel and every third-party repository Defendants could recall ever hearing about at

3

Feenix), on June 18 (the "Revised Feenix Search Protocol"), Feenix inquired internally as to

these new repositories to determine whether these were likely to produce relevant information.

ECF Doc. No. 120-3, at Exhibit 5. In the interim, Feenix collected and reviewed documents that

it knew would be responsive to Defendants' 70 scattershot requests for production.

On July 7, the parties exchanged productions. In line with Feenix's expectations,

Defendants' production consisted of 70 relevant documents and over 3,900 text messages

between Mr. Sehgal and/or Mr. Hoffman and Feenix personnel from 2018 and 2019 that

provided no new information whatsoever. Feenix, on the other hand, produced over 1,100

documents relating to the operation of its business, including many of the non-disclosure

agreements with third parties who have access to Feenix's confidential information that

Defendants are focused on.

In compliance with this Court's order, Feenix provided the Amended Response and

produced over 1,400 additional sensitive business documents on July 13. Defendants were

likewise ordered to produce relevant internal communications and documents no later than July

16. On July 16, Defendants produced additional documents that again contained obviously

irrelevant documents included for purposes of burdening Feenix and/or padding the number of

documents produced by Defendants, such as fantasy football invitations. Notably, these

documents contain only 223 total emails from 2020 and 2021. There are only 59 total emails sent

from Marc Sehgal or Michael Hoffman to the other. None address the formation and launch of

Steel Capital.

After consulting within the company, Feenix agreed to collect from all custodians at

Feenix, as well as from Keith Lee's personal repositories and a number of non-custodial

repositories. ECF Doc. No. 120-3, at Exhibit 13. Feenix also looked into various other non-

custodial repositories and could not determine what Defendants hoped to find from these repositories that would not already be covered by the proposed search of previously agreed-to repositories. Feenix posed the question to Defendants, who have not provided a response. Feenix is operating on the assumption that these were proposed without regard to how infrequently or temporarily they were used by Feenix in order to burden Feenix's production efforts.

The fact is that both parties have documents left to produce. Feenix does, as a result of Defendants' overly broad requests for production and search protocol. Defendants also do, as a result of their refusal thus far to produce obviously relevant documents. In an effort to move things forward, Feenix has informed Defendants that they have collected over 450,000 documents and that the Revised Feenix Search Protocol hits over 310,000 of those documents, provided a search term hit report breaking down this number by search term, and proposed to meet and confer on the topic. ECF Doc. No. 120-3, at Exhibit 9. In stark contrast to their view of Feenix's production obligations, Defendants have complained of search terms proposed by Feenix that would result in roughly 2,400 additional documents to review, ECF Doc. No. 120-3, at Exhibit 11, but have provided neither any indication of how many documents their collected universe contains, nor a search term hit report allowing Feenix to address any undue burden Defendants might be experiencing. Defendants' production efforts to date are irreconcilable with the stance they have taken in this most recent motion to compel.

**B.      Feenix has appropriately designated the Amended Response.**

After Defendants' motion for judgment on the pleadings did not result in the dismissal of Feenix's trade secret claims, in order to avoid producing relevant documents, Defendants fell back on the position that they could not identify documents responsive to these claims without a thorough identification of the trade secrets at issue, even though Defendants Sehgal and Hoffman

5

worked at Feenix for years. Taking this lack of recollection at face value, Feenix designated the

Amended Response "Highly Confidential – AEO." If Mr. Sehgal and Mr. Hoffman are indeed no

longer familiar with Feenix's trade secrets, Feenix has no obligation to enlighten the operators of

a competing business with a detailed breakdown of its trade secrets and other confidential

information.

## ARGUMENT

Defendants' complaint that Feenix's Amended Response was improperly designated

Attorneys' Eyes Only contradicts not only generally accepted litigation practices, but also their

own positions to date. As Feenix has explained to Defendants and Defendants are surely aware,

the requirement that attorneys review and analyze documents containing sensitive business

information without their clients' assistance has long been a staple of complex litigation,

especially between competing parties. Ex. 2, ECF Doc. No. 120-3, at Exhibit 15. In fact,

Defendants have confirmed that their attorneys were able to digest the contents of the Amended

Response – they confidently claim to have made a "fulsome production" responsive to the

Amended Response in spite of the AEO designation. Ex. 3. Yet, Defendants now claim that they

have not been provided with what they have been accused of misappropriating and are thus

unable to mount a defense. Something does not quite add up. Either Defendants' attorneys had

no problem working with the Amended Response and bring this motion to draw attention from

their own noncompliance with discovery obligations, or Defendants had no trouble recalling

Feenix's trade secrets and this entire dispute with respect to Feenix's response to Interrogatory

No. 2 has been a frivolous ploy to delay production of relevant documents and internal

communications (which Feenix is still yet to receive). In any event, Feenix's designation of its

Amended Response as AEO is sensible and proper.

6

As discussed above, Feenix's production efforts to date far outpace Defendants', and

Feenix has produced its documents without adding any irrelevant filler to pad its production

count or waste Defendants' time. Feenix has accomplished this while dealing with every tactic

Defendants can come up with to burden Feenix along the way, such as Defendants demands for

collection from every custodian and repository imaginable and the—apparently unnecessary—

motion practice regarding Feenix's interrogatory response. Feenix's goal from the very

beginning has been to target the documents at the heart of the dispute in discovery so that it can

assess the merits of its claims and proceed accordingly. Defendants filed the first motion to

compel in this action, and then neglected to comply with this Court's order, forcing Feenix to

request this Court's involvement. ECF Doc. No. 119. Defendants now file another motion to

compel to again avoid confronting their own production obligations. Defendants' gamesmanship

and dilatory tactics should not be rewarded.

## **CONCLUSION**

Feenix respectfully submits, for the forgoing reasons, that the Court should deny

Defendants' motion to compel.


Of Counsel:

Edward Normand
Kyle W. Roche
Warren Li
ROCHE CYRULNIK FREEDMAN LLP
99 Park Street, Suite 1910
New York, New York 10016
(646) 791-6881

/s/ Thomas A. Uebler
Thomas A. Uebler (#5074)
Joseph L. Christensen (#5146)
Hayley M. Lenahan (#6174)
MCCOLLOM D'EMILIO SMITH
 UEBLER LLC
2751 Centerville Road, Suite 401
Wilmington, DE 19808
(302) 468-5960
tuebler@mdsulaw.com
jchristensen@mdsulaw.com
hlenahan@mdsulaw.com

*Attorneys for Plaintiffs*

DATED: July 26, 2021

7