**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **FEENIX PAYMENT SYSTEMS, LLC,** *et al* | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | **NO.  20-1519** |
| | : | |
| **STEEL CAPITAL MANAGEMENT,** **LLC,** *et al* | : | |
| | : | |

## <u>MEMORANDUM</u>

KEARNEY, J.                                                                                     August 24, 2021

A limited liability company is suing its recently departed general counsel and investment officer for allegedly stealing its trade secrets.  It claims they violated federal and state trade secret law and breached the terms of an operating agreement signed when they became members of the company. It demands a jury trial. The company did not waive their right to a jury to protect its trade secrets in the operating agreement. The company later redeemed the general counsel's and investment officer's membership interests after they left under defined terms in redemption agreements. The former members now argue the company waived its right to a jury trial for its trade secret claims in the later redemption agreements. The redemption agreements incorporated the trade secret protections of the operating agreement and confirmed nothing in the redemption agreements would change terms in the operating agreement. The redemption agreements also include the company's waiver of a jury trial relating to the subject matter of the redemption agreements and the relationship then being created by those redemption agreements.

The issue today is whether the company waived a jury trial as to its trade secret claims. We can harmonize the two agreements to provide meaning to each based on the parties' chosen language.  The Redemption Agreements focus on the redemption transactions and the relationship then "being created" by those agreements.  The operating agreement defines an earlier obligation

of confidentiality for eighteen months after departing the company with no waiver of a jury. Based on the evidence adduced to date and precluded from reviewing other writings by the parties' agreements and applying every reasonable presumption against waiver, we find the company never unequivocally waived its right to a jury trial to challenge an alleged theft of its trade secrets but did waive rights to a jury trial as to the subject of the redemption agreements and the relationship then being created by the redemption agreements.  There is no evidence the company waived its right to a jury trial in the redemption agreements as to the preexisting and confirmed obligations regarding the trade secrets provided as a matter of law and the earlier operating agreement. Reading the agreements together requires we find the trade secret protections surviving the redemption agreements for eighteen months include the company's right to a jury trial. Giving meaning to each phrase of the parties' agreements, we deny the former members' motion to strike the company's jury demand on the limited trade secret issues.

## I.    Background

Keith Lee founded Feenix Payment Systems, LLC and Feenix Venture Partners, LLC (collectively, "Feenix") in 2017. He welcomed Michael Hoffman as General Counsel and Marc Sehgal to his investments team in 2018. He also offered them membership interests.

### *Operating Agreement.*

Founder Lee (individually and on behalf of Feenix), General Counsel Hoffman, and Mr. Sehgal signed the Second Amended and Restated Limited Liability Company Agreement (the "Operating Agreement") in 2018.[1] The Operating Agreement governed the relationship among Feenix and its members. It specifically governs the members' obligations of confidentiality. Messrs. Hoffman and Sehgal agreed they could not directly or indirectly use, copy, or disclose certain confidential information – including trade secret information – without earlier written

consent.[2] They agreed this obligation continues for eighteen months after they leave Feenix.[3] The parties also agreed the individual members (not Feenix) waived their "respective rights to a jury trial of any claim or cause of action based upon or arising out of this Agreement…."[4]

### *Feenix redeems Messrs. Hoffman and Sehgal's membership interests.*

Mr. Sehgal decided to leave Feenix in early 2020. General Counsel Hoffman left shortly thereafter. They began working with Steel Capital Management, LLC and Steel Capital Payments, LLC. Feenix negotiated the payment terms for redeeming their membership interests in nearly identical Membership Interest Redemption Agreements ("Redemption Agreements") signed by Feenix, Mr. Sehgal, and Mr. Hoffman in March 2020.[5] Feenix purchased all of Mr. Sehgal's and General Counsel Hoffman's membership interests.

Feenix and Messrs. Sehgal and Hoffman agreed to: incorporate the confidentiality restrictive covenant[6]; the redemption terms would not amend the Operating Agreement[7]; each party agreed to waive a jury trial "of any claim or cause of action based upon or arising out of this Agreement or any dealings between them relating to the subject matter of this Agreement and the relationship that is being established. … The scope of this waiver is intended to be all-encompassing of any and all disputes that may be filed in any court and that relate to the subject matter of this Agreement, including, without limitation, contract claims, tort claims, breach of duty claims, and all other common law and statutory claims";[8] and, the Redemption Agreement supersedes all earlier contracts or agreements with respect to the Agreement's subject matter.[9]

### *Feenix sues Messrs. Sehgal and Hoffman claiming stolen information.*

Feenix allegedly discovered General Counsel Hoffman and Mr. Sehgal may be using its perceived trade secrets with their new employer, Steel Capital Management, LLC and Steel Capital Payments, LLC. Feenix sued General Counsel Hoffman and Mr. Sehgal (and the Steel Capital

companies) for (1) violating the Defend Trade Secrets Act; (2) misappropriating its trade secrets; (3) breaching a contract; and (4) unfairly competing after misappropriating and improperly disclosing Feenix's trade secrets and confidential information relating to its investment strategy.[10] Feenix demanded a jury trial.[11]

## II.    Analysis

Messrs. Hoffman and Sehgal now move to strike Feenix's jury demand arguing Feenix waived a right to a jury trial under the Redemption Agreements relating to their departure from Feenix.[12] They further argue Steel Capital can enforce the jury waiver against Feenix as non-signatories.[13] They alternatively argue, even if Steel Capital cannot enforce the jury waiver against Feenix, we should bifurcate the jury issues from the non-jury issues and conduct a bench trial as to claims against Mr. Hoffman and Mr. Sehgal followed by a jury trial as to Steel Capital.[14] They also argue we can only harmonize the differing jury waivers by reading the operating agreement as affecting the obligations of Messrs. Hoffman and Sehgal as members but the Redemption Agreements governs their post-departure obligations.

Feenix responds its claims arise out of the Operating Agreement rather than the Redemption Agreements, which are separate and distinct contracts.[15] It argues the Operating Agreement's jury waiver only covers claims brought by Feenix equity holders, not Feenix itself.[16] It further argues, even assuming the jury waiver does apply to claims brought against Messrs. Hoffman and Sehgal, the Steel Capital entities cannot invoke the jury waiver as a non-signatory.[17] It finally argues, if we decided to bifurcate jury issues from non-jury issues, we should allow the jury trial against Steel Capital to proceed before the bench trial against Mr. Sehgal and Mr. Hoffman.[18]

The issue is whether Feenix ever knowingly, intentionally, and voluntarily waived a jury trial on its efforts to protect perceived trade secrets. All agree it did not do so in the Operating Agreement. The question is whether it did so in the Redemption Agreements. Messrs. Hoffman, Sehgal, and the Steel entities have not shown Feenix waived a jury trial when seeking to recover for the alleged loss of trade secrets under the Operating Agreement or as a matter of law. Nothing in the Redemption Agreements specify Feenix waiving those rights in the Operating Agreement. It may have waived a jury trial as to claims relating to the subject matter of the redemptions but there is no evidence of waiving its rights to a jury as to claims seeking to protect its perceived trade secrets.

The Seventh Amendment to the United States Constitution expressly protects the right to a jury trial in civil cases.[19] The question of a waiver of the Seventh Amendment right to a jury trial is a federal question controlled by federal law.[20] Federal courts accordingly apply federal law in determining whether a contractual jury trial waiver is enforceable.[21]

"Because the 'right to a jury trial is fundamental, courts indulge every reasonable presumption against waiver.'"[22] Private litigants may nonetheless waive this right so long as the waiver is made knowingly and voluntarily.[23] "A contractual waiver that is made knowingly and voluntarily is a valid waiver for claims that (1) involve the parties to the contract; and (2) arise out of the contract."[24]

Apparently assuming Feenix knowingly signed the Redemption Agreements, the parties' dispute relates to the scope of the jury waiver in the Redemption Agreements. The parties agree Feenix's claims arise both as a matter of law and under section 15.5 of the Operating Agreement involving the use and disclosure of trade secrets or confidential information. The parties disagree whether the Redemption Agreements supersede the Operating Agreement (at least with respect to

5

Section 15.5), and whether the jury waiver in the Redemption Agreements apply to Feenix's trade secret claims.

We conclude, after careful review of relevant language in the two contracts, Feenix's claims do not fall within the scope of the Redemption Agreements' jury waiver. Feenix's claims instead arise out of the Operating Agreement; the jury waiver in the Operating Agreement does not apply here. And the Redemption Agreements do not amend or supersede the Operating Agreement in such a way which would allow us to broadly apply the Redemption Agreements' jury waiver to Feenix's claims.

We first look to the Operating Agreement from which Feenix's claims undisputedly arise. The Operating Agreement contains a jury waiver provision, but by its plain language, the waiver applies only to claims asserted by "Holders." The Operating Agreement defines a "Holder" as "a Person in regard to such Person's Interest in Common Units." The jury waiver accordingly only applies to claims brought by Feenix's equity holders, not Feenix itself. Feenix retains its right to a jury trial under the Operating Agreement.

We must therefore determine whether Feenix waived its constitutional rights in the later Redemption Agreements. The Redemption Agreements' jury waiver applies to "any claim or cause of action based upon or arising out of this Agreement or any dealings between them *relating to the subject matter of this Agreement* and the relationship that is being established."[25] Defendants point to Section 9 of the Redemption Agreements – in which the Redeemed Members "expressly acknowledge[] that Section 15.5 of the Operating Agreement survives the execution of this Agreement" – and argue this reference shows the two agreements "concern precisely the same subject matter as relevant here – Mr. Hoffman's and Mr. Sehgal's confidentiality and non-solicitation obligations to [Feenix]." Feenix argues the jury waiver does not apply to Feenix's

claims because the Operating Agreement and Redemption Agreements are distinct contracts which do not concern the same subject matter. We agree with Feenix.

The Redemption Agreements' mere acknowledgement Section 15.5 of the Operating Agreement survives their execution does not mean the agreements now share the same subject matter. The Operating Agreement concerns Feenix's procedures and the relationship between Feenix and its members including trade secret protections while working there and for eighteen months after leaving, while the Redemption Agreements – executed over a year later – concern Feenix's purchase of Mr. Hoffman's and Mr. Sehgal's equity interests in Feenix. Claims for breach of the Redemption Agreements or other claims related to the redemption of Messrs. Hoffman's and Sehgal's equity interests would fall within the scope of a jury waiver extending to claims "relating to the subject matter" of the Redemption Agreements. We are not faced with such claims here. For example, neither party is claiming a breach of the Redemption Agreements. Feenix's claims instead arise under the Operating Agreement, an entirely separate contract. According to Defendants' theory, the Redemption Agreements' jury waiver would extend to all claims arising from any other agreements merely mentioned or referenced in the Redemption Agreements.[26] They did not adduce an evidentiary basis to find the parties intended the scope of the jury waiver to apply so broadly beyond the subject matter of the Redemption Agreements.[27]

The Redemption Agreements' integration clause does not change this outcome. The integration clause states the Redemption Agreements "supersede all prior meetings, communications, representations, negotiations, contracts, or agreements…with respect to the subject matter hereof…." By its plain language, the Redemption Agreements only supersede any prior agreements *concerning the same subject matter*. As previously explained, we cannot conclude the Operating Agreement concerns the same subject matter as the Redemption

Agreements. And indeed, the Redemption Agreements explicitly evidence the parties' intent to maintain the Operating Agreement as a separate contract by stating the Redemption Agreements "shall not constitute an amendment to the Operating Agreement." The integration clause therefore does not impact the Operating Agreement and its obligations.[28]

Defendants attempt to broadly apply a jury waiver in the Redemption Agreements to claims arising out of an entirely distinct agreement. We cannot find, remaining mindful of our obligation to "indulge every reasonable presumption against waiver," Feenix clearly waived its right to a jury trial as to its claims which undisputedly arise under the Operating Agreement. Because we do not find any of Feenix's claims to fall within the scope of the Redemption Agreements' jury waiver, we need not reach the remaining arguments.

## III.   Conclusion

Sophisticated lawyers, investors, and businesspersons negotiated two agreements governing different subject areas relating to Feenix over a couple of years: they first set the terms for forming and managing the entities they would collectively own including protecting the entities' trade secrets for the present and for the eighteen months following departure; and then later set the terms for redeeming the ownership interests when two members departed and defining their relationship moving forward including incorporating the trade secret protections. Feenix never signed an agreement expressly waiving their constitutional right to a jury trial on the limited trade secret issue. The departing members did not clarify their intent (as they now express in this case) of Feenix waiving a jury trial for preexisting obligations.  Mindful we must apply every reasonable presumption against waiver of a jury trial, we cannot cavalierly piece together phrases in a later agreement to waive a right to demand a jury attendant to protecting trade secrets. Messrs. Hoffman and Sehgal do not offer a basis for us to find Feenix knowingly, intentionally or voluntarily waived this valuable right. Feenix certainly did not do so in the Operating Agreement.

We have no reason to find it changed its mind and did so when redeeming the membership interests. The departing members could have required the jury waiver language in the Redemption Agreements as to trade secrets and did not. We deny their motion to strike the jury demand.

---

[1] *See* ECF Doc. No. 131-1.

[2] *Id.*, Operating Agreement at 43-44, § 15.5 (using the pagination assigned by the CM/ECF docketing system).

[3] *Id.*

[4] *Id.* at 49, § 19.12.

[5] *See id.*, Redemption Agreements at 75-89 (using the pagination assigned by the CM/ECF docketing system).

[6] *Id.* at 69, § 9; 85, § 9. "The Redeemed Member (Messrs. Sehgal and Hoffman) expressly acknowledges that Section 15.5 of the Operating Agreement survives the execution of this Agreement."

[7] *Id.* at 70, § 12; 85-86, § 12. "This Agreement shall not constitute an amendment to the Operating Agreement. If any provision of this Agreement is determined by a court to be invalid or unenforceable, that determination will not affect the other provisions hereof, each of which will be construed and enforced as if the invalid or unenforceable portion were not contained herein. Such invalidity or unenforceability will not affect any valid and enforceable application thereof, and each such provision will be deemed to be effective, operative, made, entered into or taken in the manner and to the full extent permitted by law."

[8] *Id.* at 71-72, § 13(f); 87, § 13(f).

[9] *Id.* at 72, § 13(m), 88, § 13(m).

[10] ECF Doc. No. 101.

[11] *Id.*

[12] ECF Doc. No. 131 at 9-13.

[13] *Id.* at 13-15.

[14] *Id.* at 15-16.

[15] ECF Doc. No. 139 at 9-11.

[16] *Id.*

[17] *Id.* at 12-15.

[18] *Id.* at 15-16.

[19] *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007) (citing *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937); *Bouriez v. Carnegie Mellon Univ.*, 359 F.3d 292, 294 (3d Cir.2004)).

[20] *Id.* (citations omitted).

[21] *Id.* (citation omitted).

[22] *Id.* (quoting *Aetna*, 301 U.S. at 393; *Collins v. Gov't of Virgin Islands*, 366 F.2d 279, 284 (3d Cir.1966)).

[23] *Id.* (citations omitted). "In determining whether a waiver was entered into knowingly, intentionally, and voluntarily, courts consider such factors as: (1) the negotiability of the contract terms; (2) any disparity in bargaining power between the parties; (3) the business acumen of the party opposing the waiver; and the (4) conspicuousness of the jury waiver provision." *Coface Collections N. Am., Inc. v. Newton*, No. 11-52, 2012 WL 3782432, at *1 n.2 (D. Del. Aug. 31, 2012) (quoting *In re Daimler Chrysler AG Sec. Litig.*, No. 11-993, 2003 WL 22769051, at *2 (D. Del. Nov. 19, 2003), *aff'd,* 502 F.3d 212 (3d Cir.2007)). The parties do not dispute the voluntariness of any waiver.

[24] *Partners Coffee Co., LLC v. Oceana Servs. and Prods. Co.*, No. 09-236, 2009 WL 4572911, at *12 (W.D. Pa. Dec. 4, 2009) (citation and quotation marks omitted).

[25] ECF Doc. No. 131-1 at 71, § 13(f); 87, § 13(f) (emphasis added).

[26] *See Partners Coffee Co. LLC,* 2009 WL 4572911, at *12-16 (declining to apply a jury waiver in a consulting agreement to claims arising out of an asset purchase agreement despite the asset purchase agreement's recognition the consulting agreement was a material part of it); *see also Brown & Brown Inc. v. Cola*, No. 10-3898, 2011 WL 4380445, at * 5 (E.D. Pa. Sept. 20, 2011).

[27] Defendants also repeatedly refer to the Redemption Agreements' recitals as evidence they concern the same subject matter as the Operating Agreements. Recitals, however, "are not a necessary part of a contract and can only be used to explain some apparent doubt with respect to the intended meaning of the operative or granting part of the instrument…." *Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.*, 654 F. Supp. 1419, 1441 (D. Del. 1987) (citations omitted).

[28] *Lanard & Axilbund, LLC v. Wolf*, No. 14-234, 2014 WL 4722702, at *3 n.4 (E.D. Pa. Sept. 23, 2014) ("[A]n integration clause is not a talisman that operates magically to moot a separate agreement involving distinct subject matter, even if the signatories overlap.").