# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FEENIX PAYMENT SYSTEMS, LLC, and FEENIX VENTURE PARTNERS, LLC, )<br><br>Plaintiffs, )<br><br>v. )<br><br>STEEL CAPITAL MANAGEMENT, LLC, STEEL PAYMENTS, LLC, MICHAEL HOFFMAN, and MARC SEHGAL, )<br><br>Defendants. ) | No. 20-cv-01519-MAK |

## PLAINTIFFS' OBJECTIONS TO SPECIAL MASTER ORDER

Of Counsel:

Edward Normand
Kyle W. Roche
Warren Li
ROCHE FREEDMAN LLP
99 Park Street, Suite 1910
New York, New York 10016
(646) 791-6881

Thomas A. Uebler (#5074)
Joseph L. Christensen (#5146)
MCCOLLOM D'EMILIO SMITH
 UEBLER LLC
2751 Centerville Road, Suite 401
Wilmington, DE 19808
(302) 468-5960
tuebler@mdsulaw.com
jchristensen@mdsulaw.com

*Attorneys for Plaintiffs*

DATE: August 25, 2021

Plaintiffs, Feenix Payment Systems, LLC ("FPS") and Feenix Venture Partners, LLC ("FVP," and with FPS, "Feenix"), respectfully submit the following objections to the Order entered by the Special Master on August 24, 2021. ECF Doc. No. 147.

In the Order, which addresses Feenix's request for all documents concerning the creation, formation, development, and operation of Steel Capital, the Special Master orders Defendants to produce non-privileged documents relating to the "creation" of Steel Capital, including internal communications. The express premise of the Order is the Special Master's belief that Defendants had already produced all documents pertaining to the formation, development, and operation of Steel Capital. This belief is expressly based on Defendants' representation on August 19, 2021, that the only disputed category of documents are those related to the creation of the Steel Capital entities, or what has been characterized as Steel Capital's "origin story." It follows that if this express premise of the Order is incorrect, then the Court should adjust the scope of the Order.

Feenix respectfully submit that the Special Master's express premise in ordering the relief she did was incorrect. Feenix did not have the opportunity in the briefing to respond to Defendants' letter brief making the forgoing representation, but categorically objects to Defendants' representation. In particular, Feenix has received minimal internal communications between Mr. Sehgal and Mr. Hoffman relating to the formation, development, and operation of Steel Capital. This is because, as Defendants have stated, they have deemed relevant and responsive only those documents relating to Steel Capital's formation, development, and operation *that expressly refer to Feenix*. See Transcript dated Aug. 16, 2021 (Ex. A) at 65-66 ("But most importantly, what we're not hearing is, why is it relevant if it's not related to Feenix . . . So it has to tie back to Feenix. We have not produced documents that do not relate to it. We don't believe that they're discoverable."). Accordingly, as Feenix stated in its July 23 motion to compel, Defendants have

produced nearly no relevant internal communications (only 223 total emails, including only 59 total emails between Mr. Sehgal and Mr. Hoffman, and no text messages from 2020 and 2021) regarding the formation and launch of Steel Capital, Steel Capital's business plan, product development goals and timelines, market strategy, market analysis, organizational structure, and portfolio company investments. ECF Doc. No. 119.

Defendants' self-imposed limitation on the relevant documents concerning the formation, development, and operation of Steel Capital is plainly unreasonable and critically undercuts the fundamental premise of the Special Master's Order. As Feenix demonstrated to the Special Master, reflected in Exhibit B hereto, because trade secret claims and breaches of Section 15.5(a) and 15.5(c) of the Operating Agreement remain at issue, documents concerning not only the "creation," but also the continuing formation, development, and operation of Steel Capital, are relevant. This is true regardless of whether such documents expressly refer to Feenix.

Plaintiffs are entitled to all of the documents reasonably calculated to show that Steel Capital has created, formed, developed, and operated its business based on Feenix trade secrets and confidential information, such that, for example those aspects of Steel Capital's business are substantially similar to the corresponding aspects of Feenix's preexisting business. There is no basis for limiting the relevant documents to only those in which Steel Capital in effect *admits* that it has used or is using Feenix's trade secrets and confidential information or otherwise refers to "Feenix." Such a limitation on discovery in any case concerning trade secrets or the misuse of confidential information would insulate any remotely sophisticated defendant from liability. Just as fundamental, ordering Defendants to produce only documents concerning the "creation" of Steel Capital allows the likelihood of an unduly narrow production, derived from an unduly nar-

row time period, concerning only the barest information of Steel Capital's formal instantiation as a corporate entity.

Any discovery order that permits Defendants to produce only (i) the documents concerning the mere formal "creation" of Steel Capital and (ii) the internal documents in which Steel Capital refers to "Feenix" is unreasonable on its face. The Court might imagine a trial in which Feenix's counsel would seek to explain to the jury how Steel Capital was formed and the information that its founders used to form, develop, and operate that business—but would simply be unable to do so because Defendants had declined to produce the documents allowing counsel to make such a showing. The discovery in this matter must permit Feenix to understand the relevant facts—and thus to have access to the documents—concerning the creation, formation, development, and operation of a business that, as Feenix has shown through its allegations, is substantially similar to Feenix's pre-existing business.

The documents Plaintiffs seek are reasonably calculated to lead to the disclosure of evidence relating to (a) Steel Capital's use of Feenix's trade secrets and confidential information; (b) any development time and costs that Steel Capital may have avoided through use of Feenix's trade secrets and confidential information; (c) Steel Capital reaching the market with its business model in an impossibly short period of time, demonstrating misappropriation; and (d) substantial similarity between Steel Capital's business model and Feenix's business model that would shift the burden of proof to Steel Capital to demonstrate it did not use Feenix's trade secrets and confidential information. These documents and communications would include those relating to how Mr. Sehgal and Mr. Hoffman came up with the idea for Steel Capital, how they decided to create the business together, how they created and implemented Steel Capital's business plan and strat-

3

egy, how they decided what customers to target, how Steel Capital operates, and how they decided the way they have pursued Steel Capital's business.

In sum, considering the mistaken, foundational premise of the Special Master's Order, Feenix asks for clarification that the Order adopts Feenix's proposed scope, including communications beyond reference to Feenix, and requires that Defendants produce not only non-privileged documents, including internal communications, relating to the "creation" of Steel Capital, but also relating to the formation, development, and operation of Steel Capital.

Of Counsel:

Edward Normand
Kyle W. Roche
Warren Li
ROCHE FREEDMAN LLP
99 Park Street, Suite 1910
New York, New York 10016
(646) 791-6881

*/s/ Thomas A. Uebler*
Thomas A. Uebler (#5074)
Joseph L. Christensen (#5146)
MCCOLLOM D'EMILIO SMITH
 UEBLER LLC
2751 Centerville Road, Suite 401
Wilmington, DE 19808
(302) 468-5960
tuebler@mdsulaw.com
jchristensen@mdsulaw.com

*Attorneys for Plaintiffs*

4