## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FEENIX PAYMENT SYSTEMS, LLC, and FEENIX VENTURE PARTNERS, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 20-cv-01519-MAK |
| STEEL CAPITAL MANAGEMENT, LLC, STEEL PAYMENTS, LLC, MICHAEL HOFFMAN, and MARC SEHGAL, | ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION TO COMPEL**

Plaintiffs, Feenix Payment Systems, LLC and Feenix Venture Partners, LLC ("Feenix"), respectfully submit this Memorandum in Support of their Motion to Compel.

## INTRODUCTION

Defendants have unreasonably refused to produce two categories of documents that are critically relevant to both Feenix's claims and the inevitable defenses.

*First*, Defendants have refused to produce the documents relating to their development and operation of the business of Steel Capital Management, LLC and Steel Payments, LLC (collectively, "Steel"). Documents reflecting how Steel has developed and operated its business are necessary to Feenix's case, including to show that this business is sufficiently similar to Feenix's business to compel the inference that Steel's business improperly implements Feenix trade secrets and confidential information, which Defendants Hoffman and Sehgal took from Feenix.

*Second*, overlapping with the first category, Defendants have refused to produce all documents relating to the "creation and formation" of Steel, which they have already been ordered to produce. Defendants have unreasonably and arbitrarily chosen to limit the relevant time frame. The starting date, March 27, 2020, fails to include documents reflecting Hoffman's and Sehgal's discussions about creating Steel. Defendants have produced a communication dated March 30, 2020, in which Hoffman and Sehgal discuss what terms they would have to propose to one of Feenix's borrowers to supplant Feenix, but have produced no communications prior to that date discussing engaging one another to start a competing business. It is imminently reasonable to assume such communications exist, given that Sehgal and Hoffman regularly sent text messages to each other and that they necessarily communicated with each other in proposing to create and form Steel. The end date, August 24, 2020, when Steel acquired its first investor, fails to account for subsequent documents that, by any reasonable definition, concern the "formation" of Steel, where

the primary, common definition of that word includes "development." Feenix therefore asks the Court specifically to order Defendants to produce all documents, including text messages between Sehgal and Hoffman, concerning the creation and formation (and development and operation, to close the loophole Defendants are currently threading) of Steel.

## BACKGROUND

In an Order dated August 31, 2021, the Court approved Special Master Judge Robinson's Report and Recommendation dated August 30, 2021, ECF No. 153, and thus ordered: "Defendants shall, on or before September 2, 2021, produce all nonprivileged documents relating to the creation and formation of Steel, including internal communications regardless of whether the documents relate to trade secrets or specifically Feenix." ECF No. 154. Judge Robinson had observed that Defendants "thus far have assumed the mantle of defining the limits of relevancy based upon their view of the dispute" and have been "establishing their own metes and bounds of relevancy." ECF No. 153. Indeed, Defendants had admitted that they deemed relevant only those documents concerning Steel that expressly refer to "Feenix" or that *Defendants* interpret as relating to Feenix's trade secret. *See* Transcript dated Aug. 16, 2021 (Ex. A), at 65-66.

Judge Robinson thus rejected Defendants' self-imposed limitations on those categories of relevant documents. Considering this ruling, Feenix subsequently asked Defendants to confirm that they would not apply self-imposed limitations on relevance with respect to Feenix's requests seeking documents relating to the "development and operation" of Steel. Defendants responded by asserting that they were "perplexed" by the letter, which they said "mischaracterizes" the rulings at issue, and that they had complied with the Court's Order.

Defendants have interpreted the Order to require them to produce only documents and communications within a certain time span: March 27, 2020 (the date of Mr. Hoffman's

2

redemption agreement), through August 24, 2020 (the date Steel received its first investment from an investor). In short, Defendants have again "assumed the mantle of defining the limits of relevancy based upon their view of the dispute" and have been "establishing their own metes and bounds of relevancy." ECF No. 153. Defendants also refuse to produce the overlapping category of documents concerning the "development and operation" of Steel.

## ARGUMENT

Defendants' refusal to produce the documents discussed below turns on frivolous legal arguments. The Court should sanction Defendants for their vexatious and bad-faith conduct. *See Roffer v. Cleveland Steel Container*, 564 F. App'x 642, 645 (3d Cir. 2014); *In re Intel Corp. Microprocessor Antitrust Litig.*, 562 F. Supp. 2d 606, 609 (D. Del. 2008).

### I. THE DOCUMENTS CONCERNING THE DEVELOPMENT AND OPERATION OF STEEL ARE PLAINLY RELEVANT, AND DEFENDANTS HAVE IMPROPERLY REFUSED TO PRODUCE THEM

Feenix asserts several claims alleging that Defendants Hoffman and Sehgal created and formed Steel, and have developed and operated that business, using trade secrets and confidential information taken from Feenix. The law makes crystal clear that these documents are integral to the types of claims that Feenix pursues, including because such claims often turn on a comparison of the businesses at issue. The notion that Defendants are permitted categorically to limit discovery to hamstring Feenix's efforts even to *undertake* such a comparison and force Feenix to proceed to trial without *any* documents to illustrate how Steel's business has developed and come to operate over the last year, and thus to compare that business to how Feenix's business operates, is not reasonable. Similarly unreasonable is the notion that Steel could somehow try to convince the jury that its business is not substantially similar to Feenix's business *without* addressing how Defendants have developed and operated Steel over the last year.

3

A plaintiff asserting the improper use of trade secrets or confidential information may show such a violation, across jurisdictions, by demonstrating the "substantial similarity" between the two products or strategies that allegedly both comprise such information. This use of circumstantial evidence makes sense because the defendants in such cases are unlikely to produce direct evidence of the misappropriation or misuse of such information:

> [T]he law of trade secrets acknowledges the basic logic that when two products look alike, there is probably more than a coincidental connection between them. Courts recognize that if what is done or produced by the alleged thief bears some unique markers of the allegedly stolen secrets, it may be inferred that the thief uses the secrets. The presumption of use makes sense, given the judicial recognition that misappropriation and misuse of trade secrets can rarely be proven by convincing direct evidence. Thus, even if the defendant alleges that it had the ability to develop or discover the trade secret independently, it will nonetheless retain the burden to demonstrate that it did not use the plaintiff's trade secret information.

David W. Quinto & Stuart H. Singer, *Trade Secrets* § 2.06[2], at 120-21 (2014).

Special discovery masters in Delaware trade secrets cases have also held that the documents relating to the supposed independent development of a process that resembles the alleged trade secret are discoverable. *Incyte Corp. v. Flexus Biosciences, Inc.*, 2017 WL 5128979, at *4-7 (Del. Super. Ct. Oct 27, 2017). Relevance is satisfied "if there is any possibility that the information sought may be relevant to the subject matter of the action." *Id.* at *4 and n. 26 (quoting cases). Any competition concerns in the unlikely event that Steel's business actually operates in a completely different manner than Feenix's are addressed by the "Highly Confidential – AEO" designation that both parties have employed to protect produced information. *Id.* at *6.

Feenix will undertake to show that the business model that Steel determined to employ has been and continues to be substantially similar to and bearing some "unique markers" of the business model that Feenix has long employed. With the burden shifted, Defendants will then have to introduce evidence demonstrating development of its business strategy independent of Feenix's

4

confidential and trade secret information. Because Defendants' have stated in internal correspondence laying out discussion points with potential portfolio companies that have been produced that their company has a similar strategy to Feenix's, Defendants will inevitably have to demonstrate an independent development story. There are multiple legal theories supporting the relevance of these documents.

*First*, as to the use of trade secrets or confidential information, a "use may also consist of nothing more than "passive consideration." Use may also occur if a company avoided incurring development expenses. The corollary is also true: the use of the trade secret as a starting point to assist or accelerate research is also actionable." Quinto & Singer, *supra*, § 2.02[3], at 54. Feenix's request for production of documents regarding the development and operation of Steel is reasonably calculated to lead to the disclosure of the at least "passive consideration" that Steel's principals gave to the trade secrets and confidential information that they learned while at Feenix and how they were then able to avoid incurring development expenses or accelerate the development of their present strategy through their use.

*Second*, misappropriation of a trade secret may be demonstrated through evidence and testimony that a defendant attained the same result as a competitor in an impossibly short period of time. *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 597-98 (Del. Ch. 2010); *accord Agilent Technologies, Inc. v. Kirkland*, 2010 WL 610725 at *19-23 (Del. Ch. Feb. 18, 2010). Feenix's demonstration of misappropriation will likely have to be proven through means other than direct evidence, such as short development period that likely could not have been achieved without misappropriation.

*Third*, Delaware courts have interpreted the "inevitable disclosure" doctrine to state that one "cannot "unlearn" what he learned while working at [a company]. If he is allowed to work with [competitor], his extensive knowledge would almost certainly filter into his work and result

5

in disclosure of [company] trade secrets." *W.L. Gore & Assocs., Inc. v. Wu*, 2006 WL 2692584 at *14 (Del. Ch. Sept. 15, 2006); *see also UtiliSave, LLC v. Miele*, 2015 WL 5458960 at *9 (Del. Ch. Sept. 17, 2015). This doctrine can be applied to reason that communications and documents regarding the development and operation of a competing business by former personnel are likely to provide relevant information about whether misappropriation occurred.

As this Court has recognized, documents relating to the development of Steel's business plan and strategy and how Steel historically and presently operates are relevant regardless of whether these documents specifically reference Feenix. This is also true regardless of whether Defendants interpret these documents to relate to Feenix's trade secrets, a limiter applied by Defendants that is not only inappropriate because this assessment should not rest in their hands, but also ignores that Feenix have also brought a claim for misappropriation of confidential information, a broader category of information than Feenix's trade secrets.

## II.   IN VIOLATION OF THE COURT'S ORDER, DEFENDANTS HAVE IMPROPERLY REFUSED TO PRODUCE ALL DOCUMENTS CONCERNING THE CREATION AND FORMATION OF STEEL

Overlapping with the first category, given that the "formation" of Steel falls within the "development" of Steel, Defendants have unreasonably refused to produce all documents relating to even their narrow interpretation of the "creation and formation" of Steel. As to the beginning date that Defendants have arbitrarily chosen, documents produced to date compel the inference that documents concerning Defendants' creation of Steel from prior to that date exist, and Defendants have unreasonably refused to produce them. These documents are directly relevant to Feenix's claim for breach of the non-solicitation/non-engagement provision in Section 15.5(c) of the Operating Agreement, which the Court has reasoned "broadly prohibits a Restricted Party from soliciting any other Restricted Party – or any other individual who worked for Feenix in some capacity

but is not a Restricted Party – and applies to Mr. Sehgal's solicitation of Mr. Hoffman." ECF Doc. No. 79, at n.4. This gap in the production means either that there are *no* text messages between Sehgal and Hoffman prior to March 27, 2020, or that no such communications concern the "creation and formation" of Steel, each of which is equally hard to believe, given that Sehgal and Hoffman regularly sent text messages and that they necessarily communicated with each other in proposing to create and form Steel and in following through on that proposition.

As to the end date that Defendants have chosen, Defendants have arbitrarily chosen to limit the relevant time frame to when Steel acquired its first investor. This is unreasonable. By any reasonable measure, the "formation" of Steel includes at least its acquisition of investors and customers sufficient to constitute a reasonable facsimile of Steel's current business. The primary definition of "formation" is "an act of giving form or shape to something *or of taking form: DEVELOPMENT*." (*Merriam-Webster* (emphasis added).) No one could reasonably describe the "formation" or "development" of Apple, to take a well-known entity, as ending as of the *first* investment in the company—in 1977. Defendants have not contended that there is any undue burden or disproportionate volume to producing all of the documents concerning how Steel formed into a substantial operation, not a merely skeletal start-up, and as explained above, Feenix's requests for these documents do not constitute a "fishing expedition" – they are all directly relevant to the claims. Feenix therefore asks the Court specifically to order Defendants to produce all documents, including text messages between Sehgal and Hoffman, concerning the creation, formation, development, and operation of Steel, and for the Court to sanction them.

## CONCLUSION

Feenix respectfully submits, for the foregoing reasons, that the Court should order Defendants to produce the documents at issue and that the Court should sanction Defendants' for their vexatious and bad-faith refusal to have produced these documents already.

7

W0219743.docx.v1-9/23/21

| | |
|---|---|
| Of Counsel:<br><br>Edward Normand<br>Kyle W. Roche<br>Warren Li<br>ROCHE FREEDMAN LLP<br>99 Park Street, Suite 1910<br>New York, New York 10016<br>(646) 791-6881 | */s/ Thomas A. Uebler*<br>Thomas A. Uebler (#5074)<br>Joseph L. Christensen (#5146)<br>MCCOLLOM D'EMILIO SMITH<br> UEBLER LLC<br>2751 Centerville Road, Suite 401<br>Wilmington, DE 19808<br>(302) 468-5960<br>tuebler@mdsulaw.com<br>jchristensen@mdsulaw.com<br><br>*Attorneys for Plaintiffs* |

DATED: September 23, 2021